# EXHIBIT C



## DALLAS COUNTY CIVIL DISTRICT COURT COVER SHEET
## DC-18-09810

**STYLED**  CAROLYN CARPENTER _____ **v.** BOSTON SCIENTIFIC CORPORATION _____

This Civil Cover Sheet must be completed, filed and served with every petition.  The information should be the best available at the time of fling, understanding that the information may change before trial.  <u>This information does not constitute a discovery request, response, or supplementation, and is not admissible at trial.</u>  **Check (√) all applicable boxes.**

| Plaintiff(s) | Defendant(s) (list separately) |
|---|---|
| ☐ Pro Se _____ | Boston Scientific Corporation |
| Address _____ | _____ |
| Telephone/Fax _____ | _____ |
| E-mail _____ | _____ |
| ☑ Attorney for Plaintiff(s) | _____ |
| State Bar No. Robert Kleinman, 24055786 | _____ |
| Address 404 West 7th, Austin, TX, 78701 | _____ |
| Telephone/Fax 512-299-5329 | _____ |
| E-mail robert@commonsensecounsel.com | _____ |

### PARTIES *MUST* CHECK ONE CASE TYPE AND MAY CHECK ONE SUB-TOPIC

☐ Administrative Appeal
☐ Bill of Review
☐ Certiorari
☐ Code Violations
☐ Condemnation
☐ Construction
☐ Construction
☑ Debt/Contract
☐ Defamation
☑ Other Commercial Dispute
    ☐ Antitrust/Unfair Comp
    ☑ Consumer/DTPA
    ☐ Franchise
    ☑ Fraud/Misrep
    ☐ Intellectual Property
    ☐ Non-Competes
    ☐ Partnership
    ☐ Securities/Stock
    ☐ Tortuous Interference
    ☐ Other Commercial
☐ Discipline
☐ Discovery
    ☐ Rule 202 Depositions
    ☐ Commissions
    ☐ Subpoena
    ☐ Letters Rogatory
    ☐ Other Discovery
☐ Employment
    ☐ Discrimination
    ☐ Retaliation

☐ Termination
☐ Other Employment
☐ Foreclosure
    ☐ R 736
    ☐ Other than R 736
☐ Foreign Judgment
☐ Insurance
☐ Mass Tort/MDL/Rule 11
    ☐ Asbestos
    ☐ Baycol
    ☐ Breast Implant
    ☐ Firestone
    ☐ Phen-Fen
    ☐ Silica
    ☐ Other Multi-Party
☐ Motor Vehicle Accident
    ☐ Other Personal Injury
    ☐ Assault/Battery
    ☑ Product
    ☐ Premises
    ☐ Other Personal Injury
☐ Name Change
☐ Post-Judgment
☐ Professional Liability
    ☐ Accounting
    ☐ Legal
    ☐ Med/Mal
    ☐ Other Prof. Liab.
☐ Property

☐ Partition
☐ Quite Title
☐ Trespass/Try Title
☐ Other Property
☐ Prejudgment Remedy
☐ Seizure/Forfeiture
☐ Tax
    ☐ Tax Appraisal
    ☐ Tax Delinquency
    ☐ Tax Land Bank
    ☐ Tax Personal
    ☐ Tax Real
☐ Workers Comp
☐ Other

**ADDITIONAL SUB-TOPICS**
☐ Attachment
☐ Bill of Discovery
☐ Class Action
☐ Declaratory Judgment
☐ Garnishment
☐ Interpleader
☐ License
☐ Mandamus
☐ Receiver
☐ Sequestration
☐ Severance
☐ TRO/Injunction
☐ Turnover

| DISCOVERY LEVEL | | ☐ Level 1 | | ☐ Level 2 | | ☑ Level 3 | |
|---|---|---|---|---|---|---|---|

Local Rule 1.08 Certification (Must be completed and signed)

This case is not subject to transfer pursuant to Local Rule 1.07, or
This case is related to another case filed or disposed of in Dallas County:
Court: 95th Jud. Dist. Court  Style: SALAZAR v. BOSTON SCIENTIFIC CORPORATION  Case No. DC-12-14349

Attorney's Signature

FILED
DALLAS COUNTY
7/27/2018 12:41 PM
FELICIA PITRE
DISTRICT CLERK

Alicia Mata

DC-18-09810

| | |
|---|---|
| CAROLYN CARPENTER, | §   Cause No. _____ |
| | § |
| Plaintiff, | § |
| | §   IN THE DISTRICT COURT |
| v. | § |
| | § |
| BOSTON SCIENTIFIC | §   \_\_\_TH JUDICIAL DISTRICT |
| CORPORATION, | § |
| | § |
| Defendant. | §   DALLAS COUNTY, TEXAS |
| | § |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Carolyn Carpenter and files her Original Petition complaining of Defendant Boston Scientific Corporation, and for cause of action, would respectfully show the Court as follows:

### DISCOVERY LEVEL

1.      Plaintiffs intend that discovery be conducted under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### PARTIES AND SERVICE

2.      Plaintiff Carolyn Carpenter is an individual and resident of Richardson, Dallas County, Texas.

3.      Defendant Boston Scientific Corporation ("Defendant Boston Scientific") is a Delaware corporation with its principal place of business at One Boston Scientific Place, Natick, Massachusetts 01760-1537. Defendant Boston Scientific may be served with process by serving its registered agent, Corporation Service Company D B A +, at 211 East 7th Street, Suite 620, Austin, Texas 78701.

### VENUE

4.     Pursuant to Section 15.002(a)(1) and (2) of the Texas Civil Practice and Remedies Code, venue is proper in Dallas County, Texas because this is the county in which all or a substantial part of the events giving rise to this claim occurred.[1]

## NO FEDERAL CLAIMS PLEADED

5.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision. Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. § 1331.

## ALTERNATIVE ALLEGATIONS

6.     To the extent any allegation in the FACTS or CAUSES OF ACTION sections that follow are inconsistent with any other allegation, such inconsistent allegations are pleaded in the alternative pursuant to Texas Rule of Civil Procedure 48. TEX. R. CIV. P. 48; *see Horizon Offshore Contractors, Inc. v. Aon Risk Servs.*, 283 S.W.3d 53, 59 (Tex.App.—Houston [14th Dist.] 2009, pet. denied) ("[A] a party may assert inconsistent facts or remedies simultaneously against different defendants, settle with one defendant, and still recover judgment against the other defendant even though the facts or remedies alleged against the second defendant are inconsistent with the facts or remedies alleged against the settling defendant.").

## FACTS

## TRANSVAGINAL MESH PRODUCTS SOLD BY DEFENDANT BOSTON SCIENTIFIC

7.     At all times relevant herein, Defendant Boston Scientific was engaged in the business of placing medical devices into the stream of commerce by designing, manufacturing, marketing, packaging, labeling, and selling such devices, including the Advantage Fit Transvaginal Mid-

---

[1] A number of similar product-based personal injury claims relating to vaginal mesh products have been pending or resolved before the 95th Judicial District Court in Dallas County, including cases involving this Defendant (e.g. *Salazar v. Boston Scientific Corp.*, No. DC-12-14349 (95th Dist. Ct., Dallas County, Tex. Sept. 2014)

Urethral Sling System ("Advantage Fit"). The Advantage Fit is targeted at women who suffer from pain, discomfort, and urinary incontinence. The Advantage Fit is represented by Defendant Boston Scientific to correct and restore normal vaginal structure by implantation of polypropylene mesh in the vaginal wall tethered in place by two arms that extend up through a woman's pelvis. They are specifically promoted to physicians and patients as an innovative, minimally invasive procedure with minimal local tissue reactions, minimal tissue trauma, and minimal pain while correcting urinary incontinence.

8.      Prior to the implantation of the Advantage Fit at issue in this claim, Defendant Boston Scientific sought and obtained Food and Drug Administration ("FDA") clearance to market the Advantage Fit under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices marketed prior to May 28, 1976. No formal review for safety or efficacy is required.

9.      Despite claims that the monofilament polypropylene mesh in the Advantage Fit is inert, the scientific evidence shows that this material is biologically incompatible with human tissue and promotes an immune response. This immune response promotes degradation of the mesh material and can contribute to the formation of severe adverse reactions to the mesh.

10.     The Advantage Fit has been and continues to be marketed to the medical community and to patients as safe, effective, and reliable medical devices that can be implanted by safe, effective, and minimally invasive surgical techniques.

11.     Defendant Boston Scientific marketed and sold the Advantage Fit through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing and the provision of valuable cash and non-cash benefits to healthcare providers. Defendant Boston Scientific also utilized documents, patient brochures, and

websites, offering exaggerated and misleading expectations as to the safety, utility, and efficacy of the Advantage Fit and its other transvaginal mesh products.

12. Contrary to the representations and marketing of Defendant Boston Scientific, the Advantage Fit has high failure, injury, and complication rates, fails to perform as intended, requires frequent and often debilitating revision surgeries, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiff Carpenter. The defects stem from many issues, including:

    a.    the use of polypropylene material in the Advantage Fit and the immune reaction that results;

    b.    the design of the Advantage Fit to be inserted transvaginally into an area of the body with high levels of pathogens that adhere to the mesh, which can cause immune reactions and subsequent tissue breakdown;

    c.    the contraction and/or shrinkage of the mesh and surrounding scar tissue;

    d.    biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade and the device to migrate into organs and surrounding structures;

    e.    the use and design of anchors in the Advantage Fit that when placed correctly are likely to pass through and injure major nerve routes in the pelvic region;

    f.    degradation of the mesh itself over time which causes the internal tissue to degrade;

    g.    the welding of the mesh itself during production, which creates a toxic substance that contributes to the degradation of the mesh and host tissue; and

    h.    the design of the trocars (devices used to insert the Advantage Fit into the vagina) requires tissue penetration in nerve-rich environments, which results frequently in the destruction of nerve endings.

13.     Upon information and belief, Defendant Boston Scientific has consistently underreported and withheld information about the propensity of its Advantage Fit to fail and to cause injury and complications and has misrepresented the efficacy and safety of its transvaginal mesh products, including the Advantage Fit, through various means and media, actively and intentionally misleading the public.

14.     Despite the chronic underreporting of adverse events associated with the Advantage Fit, enough complaints were recorded for the Food and Drug Administration ("FDA") to issue a public health notification regarding the dangers of these devices.

15.     On October 20, 2008, the FDA issued a Public Health Notification that described over a thousand (1,000) complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to the Advantage Fit and other similar products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that Defendant Boston Scientific is one of the manufacturers of the products that are the subject of the notification.

16.     On July 13, 2011, the FDA issued a Safety Communication entitled, "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of pelvic organ prolapse was an area of "**continuing serious concern**." (emphasis added) The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of pelvic organ prolapse were "not rare." These serious complications include, but are not limited to, neuromuscular problems, vaginal scarring/shrinkage, and emotional problems. Many of the serious complications required medical and surgical treatment and hospitalization. The FDA concluded that it was not clear that transvaginal repair of pelvic organ prolapse and stress urinary incontinence with mesh kits was more effective than traditional non-mesh

PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND                                              PAGE 5 OF 15

repair of these conditions. The FDA conducted a systematic review of the published scientific literature from 1996 to 2011 and concluded that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair." In the July 13, 2011 Safety Communication, the FDA concluded that "a mesh procedure may put the patient at risk for requiring additional surgery or for the development new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible." The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13, 2011 was known or knowable to Defendants and was not disclosed in any manner.

17.     Defendant Boston Scientific has further known the following:

      a.    that some of the predicate devices for the Advantage Fit had high failure and complication rates, resulting in the recall of some of these predicate devices;

      b.    that there were and are significant differences between the Advantage Fit and some or all of the predicate devices, rendering them unsuitable for designation as predicate devices;

      c.    that these significant differences render the disclosures to the FDA incomplete and misleading; and

      d.    that its transvaginal mesh products, including thee Advantage Fit, were and are causing numerous patients severe injuries and complications.

18.     Defendant Boston Scientific suppressed this information and failed to accurately and completely disseminate or share this and other critical information with others, including Plaintiff Carpenter. As a result, Defendant Boston Scientific actively and intentionally misled and continues to mislead the public into believing that its transvaginal mesh products, including the Advantage Fit, and the procedures for implantation were and are safe and effective.

19.     Defendant Boston Scientific failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of the Advantage Fit.

20.     Defendant Boston Scientific failed to design and establish a safe, effective procedure for removal of the Advantage Fit; thus, in the event of a failure, injury, or complications, it is impossible to easily and safely remove the Advantage Fit or parts thereof.

21.     Feasible and suitable alternative designs as well as suitable alternative procedures and instruments for repair of pelvic organ prolapse and stress urinary incontinence have existed at all times relevant to this matter.

22.     The Advantage Fit was at all times utilized and implanted in a manner foreseeable to Defendant Boston Scientific, as they generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

23.     Defendant Boston Scientific provided incomplete, insufficient, and misleading training and information to physicians to increase the number of physicians utilizing the Advantage Fit, and thus increase the sales of these products.

24.     The Advantage Fit implanted into Plaintiff Carpenter was in the same or substantially similar condition as when it left the possession of Defendant Boston Scientific, as well as being in the condition directed by and expected by this Defendant.

25.     Plaintiff Carpenter and her physicians foreseeably used and implanted the Advantage Fit, and did not misuse or alter these products in an unforeseeable manner.

26.     The injuries, conditions, and complications suffered by women who have been implanted with the Advantage Fit include, but are not limited to, mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, recurrent and chronic infections, and prolapse of organs. In many cases, these women have been forced to undergo intensive medical treatment,

including, but not limited to, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and surgeries to remove portions of the female genitalia, to locate and remove mesh, and to attempt to repair pelvic organs, tissue, and nerve damage.

27.     The medical and scientific literature studying the effects of polypropylene pelvic mesh (like the material used in the Advantage Fit) have examined each of these injuries, conditions, and complications and determined that they are in fact casually related to the mesh itself and do not often implicate errors related to the implantation of the devices.

28.     Defendant Boston Scientific knew and had reason to know that the Advantage Fit could and would cause severe and grievous personal injury to the users/recipients of the Advantage Fit, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

29.     At all relevant times herein, Defendant Boston Scientific continued to promote Advantage Fit as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

30.     At all relevant times herein, Defendant Boston Scientific failed to provide sufficient warnings and instructions that would have put Plaintiff Carpenter and the public on notice of the dangers and adverse effects caused by implantation of the Advantage Fit.

31.     The Advantage Fit was defective as marketed due to inadequate warnings, instructions, labeling, and/or inadequate testing.

### Medical Care at Issue

32.     On April 5, 2012, Plaintiff Carpenter underwent surgery during which she was implanted with the Advantage Fit at Texas Health Presbyterian Hospital Plano to treat her urinary incontinence, the use for which Defendant Boston Scientific marketed and sold these products.

33.     As a result of the implantation of the Advantage Fit, on or about January 2017, Plaintiff Carpenter underwent surgery to remove stones from her bladder in Dallas County, Texas.

34.     As a result of the implantation of the Advantage Fit, on or about May 2017, Plaintiff Carpenter underwent surgery to remove mesh which had eroded into her bladder in Dallas County, Texas.

35.     As a result of the implantation of the Advantage Fit, on or about May 2018, Plaintiff Carpenter underwent surgery to remove additional mesh which had eroded into her bladder and to treat bladder lesions in Dallas County, Texas.

36.     As a result of the implantation of the Advantage Fit, Plaintiff Carpenter suffered and will continue to suffer serious bodily injuries, including pain, discomfort, chronic infections which have required extensive treatment, hospitalizations, bladder/mesh stones, additional surgery(ies), continued incontinence, erosion of the Advantage Fit into her surrounding organs and tissues.

## CAUSES OF ACTION

### Negligence

37.     On the occasion in question, the injuries and damages sustained by Plaintiffs were proximately caused by the negligence of Defendant Boston Scientific, at the least, in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Advantage Fit.

38.     Each act or omission of negligence, acting separately or in combination, was a proximate cause of the damages and injuries to Plaintiffs.

### Strict Liability, Design Defect

39.     Upon information and belief, Proxy Biomedical, Ltd., the manufacturer or the mesh material, which manufactures the polypropylene mesh component of the Advantage Fit, is not subject to the jurisdiction of this Court. Thus, pursuant to Chapter 82.003(a)(7)(B) of the Texas Civil Practice and Remedies Code, Defendant Boston Scientific is not excused from liability for being a nonmanufacturing seller.

40.     At the time Plaintiff Carpenter was implanted with the Advantage Fit, Defendant Boston Scientific was engaged in the business of selling these products and Proxy Biomedical, Ltd. was engaged in the business of selling the polypropylene mesh component of these products.

41.     The Advantage Fit and its polypropylene mesh component were defectively designed when sold.

42.     The Advantage Fit and its polypropylene mesh component were unreasonably dangerous, taking into consideration the utility of these products and the risks involved in their use.

43.     The Advantage Fit and its polypropylene mesh component reached Plaintiff Carpenter and her implanting physician without substantial change in the condition in which they were sold.

44.     The defective and unreasonably dangerous condition of the Advantage Fit and its polypropylene mesh component was a proximate cause of the damages and injuries to Plaintiff Carpenter.

45.     Thus, Defendant Boston Scientific is strictly liable to Plaintiff.

### Strict Liability, Manufacturing Defect

46.     Upon information and belief, Proxy Biomedical, Ltd., which manufactures the polypropylene mesh component of the Advantage Fit, is not subject to the jurisdiction of this Court. Thus, pursuant to Chapter 82.003(a)(7)(B) of the Texas Civil Practice and Remedies Code, Defendant Boston Scientific is not excused from liability for being a nonmanufacturing seller.

47.     The Advantage Fit and its polypropylene mesh component that was implanted in Plaintiff Carpenter were unreasonably dangerous, not reasonably safe for their intended use, and were defective as a matter of law with respect to their manufacture.

48.     The defective and unreasonably dangerous condition of the Advantage Fit and its polypropylene mesh component was a proximate cause of the damages and injuries to Plaintiff Carpenter.

49.     Thus, Defendant Boston Scientific is strictly liable to Plaintiff.

**Strict Liability, Failure to Warn**

50.     Upon information and belief, Proxy Biomedical, Ltd., which manufactures the polypropylene mesh component of the Advantage Fit, is not subject to the jurisdiction of this Court. Thus, pursuant to Chapter 82.003(a)(7)(B) of the Texas Civil Practice and Remedies Code, Defendant Boston Scientific is not excused from liability for being a nonmanufacturing seller.

51.     Defendant Boston Scientific manufactured, sold, and/or distributed the Advantage Fit and its polypropylene mesh component that were implanted in Plaintiff Carpenter.

52.     At all times mentioned herein, the Advantage Fit and its polypropylene mesh component were dangerous and presented a substantial danger to patients who were implanted with them.

53.     The risks and dangers associated with the Advantage Fit and its polypropylene mesh component were known or knowable to Proxy Biomedical, Ltd. and Defendant Boston Scientific at the time of implantation in Plaintiff Carpenter, yet Proxy Biomedical, Ltd. and Defendant Boston Scientific failed to provide warnings of such risks and dangers to Plaintiff Carpenter.

54.     Ordinary consumers would not have recognized the potential risks and dangers the Advantage Fit and its polypropylene mesh component posed because its uses were specifically promoted to improve the health of such patients while the nature and prevalence of such risks were either downplayed or not provided to consumers and their physicians.

55.     The Advantage Fit and its polypropylene mesh component were used in a way reasonably foreseeable to Proxy Biomedical, Ltd. and Defendant Boston Scientific by Plaintiff Carpenter, particularly given the educational material or instructions given to physicians in regard to these products.

56.     Proxy Biomedical, Ltd.'s and Defendant Boston Scientific's failure to adequately warn about the risks and dangers associated with the Advantage Fit was a proximate cause of the damages and injuries to Plaintiff Carpenter.

57.     Thus, Defendant Boston Scientific is strictly liable to Plaintiff.

**Breach of Implied Warranty**

58.     Defendant Boston Scientific impliedly warranted that the Advantage Fit were merchantable and were fit for the ordinary purpose for which they were intended.

59.     When the Advantage Fit was implanted in Plaintiff Carpenter to treat her medical conditions, these products were being used for the ordinary purpose for which they were intended.

60.     Plaintiff Carpenter, individually and/or by and through her physicians, relied upon the implied warranty of merchantability of Defendant Boston Scientific in consenting to have the Advantage Fit implanted in her.

61.     Defendant Boston Scientific breached this implied warranty of merchantability because the Advantage Fit implanted in Plaintiff Carpenter was neither merchantable nor suited for its intended use as warranted.

62.     These breaches of implied warranties resulted in the implantation of unreasonably dangerous and defective products in Plaintiff Carpenter's body, placing Plaintiff Wife's health and safety in jeopardy.

63.     The breaches of the aforementioned implied warranties were a proximate cause of the damages and injuries to Plaintiffs.

**Breach of Express Warranty**

64.     Defendant Boston Scientific made assurances to the general public, hospitals, and health care professionals that the Advantage Fit was safe and reasonably fit for its intended purpose.

65.     Plaintiff Carpenter and/or her healthcare providers chose the Advantage Fit based upon the warranties and representations of Defendant Boston Scientific regarding the safety and fitness of the Advantage Fit.

66.     Plaintiff Carpenter, individually, and/or by and through her physicians, reasonably relied upon the express warranties and guarantees of Defendant Boston Scientific that the Advantage Fit were safe, merchantable, and reasonably fit for their intended purpose.

67.     Defendant Boston Scientific breached these express warranties because the Advantage Fit implanted in Plaintiff Carpenter were unreasonably dangerous and defective and not as Defendant Boston Scientific had represented.

68.     These breaches of express warranties resulted in the implantation of unreasonably dangerous and defective products in Plaintiff Carpenter's body, placing Plaintiff Carpenter's health and safety in jeopardy.

69.     The breaches of the aforementioned express warranties were a proximate cause of the damages and injuries to Plaintiff.

## VICARIOUS LIABILITY

70.     Whenever in this Petition it is alleged that Defendants did or omitted to do any act, it is meant that Defendants' officers, agents, servants, employees, or representatives did or omitted to do such act and that at the time such act or omission was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## PLAINTIFF'S DAMAGES

71.     As a direct and proximate result of Defendants' improper acts and/or omissions described herein, Plaintiff Carpenter was caused to suffer severe injuries and damages, including the following:

   a.     Physical pain and mental anguish sustained in the past;

   b.     Physical pain and mental anguish that, in reasonable probability, Plaintiff Carpenter will sustain in the future;

   c.     Loss of earning capacity that, in reasonable probability, Plaintiff Carpenter will sustain in the future;

   d.     Disfigurement sustained in the past;

   e.     Disfigurement that, in reasonable probability, Plaintiff Carpenter will sustain in the future;

f.     Physical impairment sustained in the past;

g.    Physical impairment that, in reasonable probability, Plaintiff Carpenter will sustain in the future;

h.    Medical care expenses incurred in the past; and

i.     Medical care expenses that, in reasonable probability, Plaintiff Carpenter will incur in the future.

## EXEMPLARY DAMAGES

72.    Defendants' conduct described herein, when viewed objectively from the standpoint of Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Moreover, Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others. Thus, Plaintiffs seek exemplary damages in an amount to be determined by the jury.

## JURY TRIAL DEMAND

73.    Plaintiffs hereby respectfully request a trial by jury and have already submitted the appropriate fee.

## PRAYER

74.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing hereof, Plaintiffs have judgment against Defendants for all damages to which they are entitled under the laws of the State of Texas, which amount exceeds the minimum jurisdictional limits of this Court; for pre-judgment interest in accordance with law and/or at the highest legal rate; for interest on the judgment; for costs of suit; for exemplary damages; and for such other and further relief, either at law or in equity, to which Plaintiffs have shown or will show themselves justly entitled.

Respectfully Submitted,

s/robert kleinman/
Robert B. Kleinman, Tex. Bar No. 24055786
Breanne V. Cope, Tex Bar No. 24076747
John Cook, Tex Bar No. 24103739
**COMMON SENSE COUNSEL LLP**
404 West 7th Street
Austin, TX 78701
Ph:      (512) 299-5329
Fax:     (512) 628-3390
robert@commonsensecounsel.com
breanne@commonsensecounsel.com
john@commonsensecounsel.com

Michele S. Carino
**CARINO LAW**
154-59 23rd Avenue
Whitestone, New York 11357
mcarino@carinolaw.com

**ATTORNEYS FOR PLAINTIFFS**

FILED
DALLAS COUNTY
8/9/2018 1:07 PM
FELICIA PITRE
DISTRICT CLERK

Marissa Pittman

# COMMON SENSE COUNSEL® LLP
## UNCOMMON ATTORNEYS

AUSTIN | SILICON VALLEY

1-CIT ES

August 7, 2018

Dallas County Clerk
600 Commerce Street
Suite 103
Dallas, Texas 75202

RE: Case No. DC-18-09810

Dear Clerk,

Please issue a citation for Case No. DC-18009810.

Sincerely,

Robert Kleinman

**ROBERT KLEINMAN**
ADMITTED IN TEXAS, NEW YORK & CONNECTICUT

404 WEST 7TH ST, AUSTIN TX 78701     **P** 512 299 5329
ROBERT@COMMONSENSECOUNSEL.COM     **F** 512 628 3390

# FORM NO.  353-3 - CITATION
# THE STATE OF TEXAS

To:

**BOSTON SCIENTIFIC CORPORATION**
**SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY DBA +**
**211 EAST 7TH STREET SUITE 620**
**AUSTIN TX  78701**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and  petition, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **68th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **CAROLYN CARPENTER**

Filed in said Court  **27th day of July, 2018** against

**BOSTON SCIENTIFIC CORPORATION**

For Suit, said suit being numbered **DC-18-09810,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 13th day of August, 2018.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
        COURTNEY RUTLEDGE



| | |
|---|---|
| <u>**ESERVE**</u> | |
| **CITATION** | |
| **DC-18-09810** | |
| **CAROLYN CARPENTER**<br>**VS.**<br>**BOSTON SCIENTIFIC CORPORATION** | |
| ISSUED THIS<br>**13th day of August, 2018** | |
| FELICIA PITRE<br>Clerk District Courts,<br>Dallas County, Texas | |
| By:  COURTNEY RUTLEDGE, Deputy<br>_____ | |
| **Attorney for Plaintiff**<br>ROBERT B. KLEINMAN<br>COMMON SENSE COUNSEL LLP<br>404 WEST 7TH STREET<br>AUSTIN TX  78701<br>512-299-5329 | |
| robert@commonsensecounsel.com | |



# OFFICER'S RETURN

Case No. :  DC-18-09810

Court No.68th District Court

Style: Carolyn Carpenter

 vs.

Boston Scientific Corporation

Came to hand on the _____day of _____, 20_____, at _____o'clock_____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____day of_____ _____,

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____County, _____ |
| For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

FILED
DALLAS COUNTY
8/15/2018 2:41 PM
FELICIA PITRE
DISTRICT CLERK
Daniel Macias

## AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| State of Texas | County of Dallas | 68th Judicial District Court |

Case Number: DC-18-09810

Plaintiff:
**Carolyn Carpenter**

vs.

Defendant:
**Boston Scientific Corporation**

For:
Common Sense Counsel, LLP
1112 Rhinette Ave.
Burlingame, CA 94010

Received by Austin Process LLC on the 13th day of August, 2018 at 4:48 pm to be served on **Boston Scientific Corporation by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Ste. 620, Austin, Travis County, TX 78701**.

I, Mike Techow, being duly sworn, depose and say that on the **14th day of August, 2018** at **3:05 pm, I:**

delivered to **REGISTERED AGENT** by delivering a true copy of the **Citation and Plaintiff's Original petition and Jury Demand** with the date of service endorsed thereon by me, to: **Vanessa Hernandez, Corporation Service Company** as **Authorized Agent** at the address of: **211 E. 7th Street, Ste. 620, Austin, Travis County, TX 78701** on behalf of **Boston Scientific Corporation**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, of sound mind, have no interest in the above action. The facts stated in this affidavit are within my personal knowledge and are true and correct.

Subscribed and Sworn to before me on the 14th day
of August, 2018 by the affiant who is personally
known to me.

NOTARY PUBLIC

NICOLE M. HYBNER
My Notary ID # 129086987
Expires August 9, 2020

**Mike Techow**
PSC-1215, Exp. 7/31/20

**Austin Process LLC**
**809 Nueces**
**Austin, TX 78701**
**(512) 480-8071**

Our Job Serial Number: MST-2018008028
Ref: Carolyn Carpenter

Copyright © 1992-2018 Database Services, Inc. - Process Server's Toolbox V7.1e



**FORM NO. 353-3 - CITATION**
# THE STATE OF TEXAS

To:

>   BOSTON SCIENTIFIC CORPORATION
>    SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY DBA +
>   211 EAST 7TH STREET SUITE 620
>   AUSTIN TX 78701

GREETINGS:
You have been sued.. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may be
taken against you. Your answer should be addressed to the clerk of the **68th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **CAROLYN CARPENTER**

Filed in said Court **27th day of July, 2018** against

**BOSTON SCIENTIFIC CORPORATION**

For Suit, said suit being numbered **DC-18-09810**, the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 13th day of August, 2018.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas



By_____, Deputy
                COURTNEY RUTLEDGE

---

**ESERVE**

**CITATION**

**DC-18-09810**

**CAROLYN CARPENTER**
**VS.**
**BOSTON SCIENTIFIC CORPORATION**

ISSUED THIS
**13th day of August, 2018**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: COURTNEY RUTLEDGE, Deputy

---

**Attorney for Plaintiff**
ROBERT B. KLEINMAN
COMMON SENSE COUNSEL LLP
404 WEST 7TH STREET
AUSTIN TX 78701
512-299-5329

robert@commonsensecounsel.com

# DALLAS COUNTY
# SERVICE FEES
# NOT PAID

# OFFICER'S RETURN

Case No. : DC-18-09810

Court No.68th District Court

Style: Carolyn Carpenter

vs.

Boston Scientific Corporation

Came to hand on the _____ day of _____ , 20_____ , at _____ o'clock_____ .M. Executed at _____ ,

within the County of _____ at _____ o'clock _____ .M. on the _____ day of_____ ,

20_____ , by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:  To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____County, _____ |
| For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____ ,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____